HENRY R. FOOTE, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*What justifies a conviction of obtaining money by false pretences.*

Plaintiff in error purchased books of the value of $500, giving to the seller his check on a bank of Pennsylvania, dated on the day of the sale, June fifteenth, and payable July sixth. He stated that he was rather short at the time, and was frightened that there was not money enough to pay the check. In fact he had no money, and kept no account at the bank named.

*Held*, that he was properly convicted of obtaining goods by false pretences. (DYKMAN, J., dissenting.)

WRIT OF ERROR to the Court of Sessions of Queens county, to review the conviction of the plaintiff in error of obtaining goods by false pretences.

*Thomas S. Moore*, for the plaintiff in error.

*Benj. W. Downing* (district attorney), for the people.

GILBERT, J. :

The important question is whether the evidence is sufficient to sustain the indictment. In determining that question it must be assumed that the jury gave full credence to the testimony of the prosecutor, for we have no power to review a conviction except for errors of law.

The plaintiff in error was charged in the indictment with having obtained books of the value of $510 by the false and fraudulent pretence, among others, that his check on a bank in Pennsylvania, which he gave in payment for the books, was a good and available order, and that he kept an account in said bank.

The prosecutor testified that he was a dealer in old and rare books; that on the 15th of June, 1877, he was brought by one D'Arcy to the prisoner and introduced to him; that the prisoner said, I will buy your books if you will take my check, and that he also said it will be paid the sixth of July; that he had bought a lot of property and was going to build, and was rather short of money; that the money was in the business, and that he was frightened that he would not have money enough to pay the check. The check was given and was dated June twenty-sixth, and payable July 6, 1877. The prisoner had no account in the bank on which the check was drawn, nor any money therein, nor, so far as appears, in any other bank.

We are of opinion that the testimony presents a palpable case of obtaining property by false pretences. The giving of the check was a distinct representation that the prisoner kept an account in the bank; and his statement that the money was in the bank must be taken to have referred to the bank on which the check was drawn, and to have been what the prisoner had on deposit there. The effect of these statements was not qualified by the prisoner's promise to pay the check at his office, nor by his statement that he was frightened that he would not have money enough to pay the check. The check being on a bank in Pennsylvania, and the prisoner's office in New York, the promise to take up the check and to dispense with the presentation of it was an additional inducement to the prosecutor to part with his books, and his statement that he might not have money enough to pay the check was equivalent to an assertion that he had some money in the bank.

The case was submitted to the jury favorably to the prisoner, and they must have found that the making the check payable at a future day was not a mere promise, but that the whole transaction was a device to cheat. We quite agree with their conclusion.

upon the facts, and the conviction is abundantly sustained by the law. (2 Russ. on Cr. [9th Am. ed.], 639 *et seq.;* Wh. Cr. L., § 2107; *Thomas* v. *People*, 34 N. Y., 351; *Smith* v. *The Same*, 47 id., 303.)

We have examined the exceptions but have found none that are tenable, or that require comment.

The conviction must be affirmed.

DYKMAN, J., dissenting.

The indictment under which the defendant was convicted charges that he falsely pretended that a certain check drawn by him on a bank was good and genuine, and available for the payment of the sum mentioned in it, and that he kept an account at the bank; that the prosecutor believed the false pretences, and was induced by them to deliver to the defendant certain personal property. The pretences are then negatived. The check is as follows:

"No. 148.                     "FRANKLIN, VERRANGO CO., PA., &#125;
                                        "*June* 16, 1877.     &#125;

"First National Bank of Franklin:

"Pay to J. Cronin, July 6, 1877, five hundred and ten dollars ($510).                              HENRY R. FOOTE."

The defendant was convicted, and we must assume that the testimony of the prosecution was found true by the jury. The prosecutor testified: "I was brought by a gentleman by the name of D'Arcy, and he told me that he had a customer; Mr. D'Arcy introduced me to him — then Col. Henry R. Foote; he said, says he, 'I will buy your books, if you will take my check;' I will, say I, take your check, with the understanding if Mr. D'Arcy that informed me that Mr. Foote was a mighty rich man." This last remark of the witness was not a statement of what he told the defendant, but of the reason why he took his check, and hence the remark by the court: "You need not state that." The witness continued: "I will take your check, says I; says I, I will take your check; says he, it will be paid on the sixth day of July." Q. "He said it would be paid? A. Yes; on the sixth of July, says he; said I, very well." The court: "He said the money was in the bank? A. Yes, sir." On his cross-examination, this

witness testified as follows : Q. " What did he say at the time he gave you the check ? A. He said, I will give you a check upon my bank, and you can come into my office at any time and I will pay the check. Q. He said you can come into my office at any time? Yes ; that he was short of money. Q. And he would pay the check ? A. Yes, sir. Q. What did he say as to the amount of money ? I understand you to say that he said he had not money enough to meet the check. Q. Did you not say that on your direct examination ? A. I did. The court : The question is whether; on your direct examination, you stated that Col. Foote had said that he was afraid he had not money enough in the bank to pay the check ? A. That was the time he was giving me the check. Q. He did say so ? A. He did."

Here, then, we have a case where a person having some books to sell sought the defendant, after being told that he was a customer, and requested him to buy, and the defendant said, " I will buy, if you will take my check." This was agreed to, and he made the purchase, and then drew his check, dated June sixteen, payable July six, and delivered it, and said at the same time he had not money enough in the bank to pay it, but that it would be paid on the sixth day of July. The defendant testified that payment of the check was to be made at his office in New York, and it is evident that was so, for the prosecutor went there with it for that purpose the day before it was payable, and did not have it presented at the bank until he found he could not collect the money from the defendant. There was no representation by the defendant that the check was good, or that he had property, or that the money was in the bank. On the contrary, he said it was not. He said he owned some pictures, and that he was going to build, and the uncontradicted testimony is that both these statements were true. There was no artifice or fraud or deceit used to induce the sale or the acceptance of the check. On the contrary, he was sought out and requested to make the purchase, and agreed to do so on condition that his check, payable twenty days ahead, would be accepted. There is nothing to show any criminal intent, or to carry the case beyond the line of broken promises and a failure to pay into the regions of criminality, or even fraud. There was not one single false pretence shown ; and, to constitute

this crime, some pretence must be used which is false, and used with intent to perpetrate a fraud.

The offence consists in intentionally and fraudulently inducing the owner to part with his goods, or other things of value, either by a willful falsehood or by the offender's assuming a character he does not sustain, or by representing himself to be in a situation which he knows he is not in." (*The People* v. *Haynes*, 11 Wend., 558.) "To constitute the offence, several things must concur. There must be an intent to cheat or defraud some person. For that purpose, some false pretence must be designedly used, and the fraud must be accomplished by means of the false pretence." (*The People* v. *Crissie*, 4 Denio, 527.) The proof fails to bring this case within these requirements.

In the case of *The People* v. *Carl Lesser*, recently decided in the Court of Appeals, the check was post dated, and the opinion says: "If there had been no representation made, except by the delivery of the check, and the prosecution rested wholly on the allegation that the money was in the bank, the point which the prisoner's counsel seeks to raise would be good in the case, and the circumstance that the check was post dated would be very material. Under the circumstances, we think that the evidence was sufficient to justify a finding that the prisoner represented that the check was good, and the maker a man of substance, while he knew that it was worthless, and was a false token got up for the purpose of defrauding the prosecutor;" and, on this last ground, the conviction was affirmed. It cannot be claimed that there was any evidence to justify any such finding in this case. There is not a single circumstance to show that there was any device to defraud the prosecutor at all. The check given was a genuine one, and amounted only to an undertaking or promise that the money should be in bank to meet it when it became payable, and was accompanied with a declaration that it was not there. The essential elements of a crime are wanting, and the conviction should be reversed.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Conviction affirmed.